CHARLES S. HAIGHT and Others, Members of the Copartnership of HAIGHT, SMITH, GRIFFIN & DEMING, and Surviving Members of the Copartnership of HAIGHT, SANDFORD, SMITH & GRIFFIN, Respondents, *v.* LLOYD ROYAL BELGE SOCIETE ANONYME, a Corporation of the Kingdom of Belgium, Appellant.

First Department, July 6, 1926.

Attorney and client — compensation — action to recover compensation agreed on, constituting percentage of amount saved defendant in settlement of purchase price of steamships — another client of plaintiffs sold steamships to defendant — plaintiffs were to receive commissions from other client — defendant knew of plaintiffs' relations with other client — relations with other client not defense — defense that plaintiffs misrepresented their influence and were discharged, not sustained by evidence.

This is an action by the plaintiffs to recover compensation as attorneys for the defendant. The defendant purchased certain steamships belonging to the United States government. The plaintiffs were then attorneys for the seller of the steamships and were to receive a commission for their services. The defendant retained the plaintiffs to represent it in an endeavor to be relieved from a part of the purchase price of the ships purchased and to pay the plaintiffs a commission on the amount of the reduction. The plaintiffs were successful in saving to the defendant about $5,000,000, and this action is brought to recover the stipulated commissions on the amount so saved.

The defendant cannot defeat the recovery of the plaintiffs on the ground that the plaintiffs' relationship, as attorneys for the seller of the steamships, forbade them to act as attorneys for the defendant, for it appears that the defendant was informed of that relationship at the time the defendant retained the plaintiffs to act in its interest, and it appears also that the plaintiffs did work for the best interest of the defendant.

The defense that the plaintiffs misrepresented their influence and were discharged, was not established by the evidence.

APPEAL by the defendant, Lloyd Royal Belge Societe Anonyme, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 1st day of April, 1925, upon the verdict of a jury, and also from an order entered in said clerk's office on the 13th day of April, 1925, denying defendant's motion for a new trial made upon the minutes.

*Homer L. Loomis* of counsel [*Loomis & Ruebush*, attorneys], for the appellant.

*Charles E. Hughes* of counsel [*Stanley W. Schaefer*, attorney], for the respondents.

MARTIN, J.  The plaintiffs are practicing attorneys, members of the bar of this State.  The defendant is a Belgian steamship company.

The plaintiffs seek to recover compensation for services rendered to the defendant in the years 1920, 1921 and 1922, as a result of which, as plaintiffs allege, they saved for the defendant the sum of $4,986,956.91 on the purchase price of twenty steamships bought by it in the year 1920 from the United States Shipping Board.

From the outset of the war in April, 1917, Mr. Charles S. Haight, senior member of plaintiffs' firm, was thrown into close contact with the Commissioners of the United States Shipping Board. In 1917 he was retained by the owners of Norwegian vessels requisitioned by the United States Shipping Board Emergency Fleet Corporation, while under construction in American yards, and successfully adjusted the claims of these owners for compensation.  He also negotiated the purchase of steamers which were interned in the ports of North and South America; and in 1918, at the instance of the United States Shipping Board, he was sent to Switzerland to arrange for the purchase of a large number of steamers interned in South American ports.

The Anderson Overseas Corporation had sold to foreign buyers some of the Shipping Board's surplus tonnage.  That company was to receive one per cent on delivery of the ships and a further one per cent on the payments, as and when made.  Plaintiffs or their predecessors were the attorneys for Anderson.  They were to be paid for their services to him and his company one-third of the amounts received as commissions for the sale of the vessels referred to, the expenses of both parties to be deducted.

This employment of plaintiffs by Anderson or his company preceded that by defendant.  It is asserted by defendant it was in conflict with their later employment by defendant.

When the sale of the steamships to appellant was negotiated by Anderson the price was fixed at the rate of $200 per dead-weight ton.  While notes given in payment were outstanding in large amounts and at a time when the prevailing price of such shipping had fallen to $50 per dead-weight ton, appellant found it difficult to meet the notes coming due..  It sought an extension of time to pay, running over a ten-year period, or a rescission of the contract. It also claimed deductions because of representations asserted to have been made by Anderson, such as overstatement of cargo carrying capacity.  It was contended as well that the vessels were structurally defective, that there had been late deliveries of the vessels and that defendant was entitled to extensions by reason of arrangements relating to matters of foreign exchange.

42

Freight rates decreased seventy-five per cent.   The Belgian franc was depreciating steadily.   In this emergency the defendant retained the plaintiffs.   The services rendered commenced in December, 1920, and covered a period of three years.   During this period the following letters were interchanged, one being written by the plaintiff Haight on July 7, 1921, as follows:

" MY DEAR SENATOR BRYS:

" I am writing, in accordance with your suggestion, to confirm my conference with Mr. Gylsen and yourself, in Antwerp, and the agreement which we then reached, under which I have undertaken on behalf of my firm, to handle all questions between the Lloyd Royal Belge and the United States Shipping Board, in connection with your purchase of Shipping Board tonnage, on the following terms:

" (1). We are to be reimbursed, in cash, for all of our past and future expenses and are to receive a minimum cash payment of twenty-five thousand dollars ($25,000).   This sum covers our services to date, as well as future services.

" (2). In addition to the above, we are to receive five per cent (5%) upon the first two million dollars ($2,000,000), or any lesser sum, which your company may save, the saving to be computed as the difference between the original purchase price and such sum as you may eventually pay in settlement.   On any sum saved above two million dollars, we are to receive two and one-half per cent. (2½%).   It is understood, however, that such allowance as may be made you by the Shipping Board, because of the overstatement of the deadweight capacity of the vessels, is not to be computed as money saved under this paragraph, our services in that particular being covered by the payment stated in the preceding paragraph.

" (3). If, as the result of our negotiations, you fail to secure an actual reduction in the contract price, but if, nevertheless, through the prolongation of the matter as the result of our negotiations, you do make a saving because of the improvement in the exchange rate, we are to receive fair compensation for the amount of work done, but not to be computed on a fixed percentage basis.   *   *   *

" In connection with our services, and disbursements already rendered, I understand that you approve of our being paid, at the present time, our disbursements as to which we wrote Mr. Nash sometime ago, and also fifteen thousand dollars ($15,000), on account of our total cash charge of twenty-five thousand dollars ($25,000).

" I am particularly glad that I was able to go to Antwerp and

discuss this matter with you in person. I am sure that our conferences have materially helped both you and me in the obtaining of a clear understanding of conditions as they exist on both sides of the water.

"You do not need, I think, any further assurances from me that we shall leave undone nothing which is within our power, to work this matter out in the most satisfactory way possible."

In answer to the above a letter was written by Senator Brys, for defendant, on July 14, 1921, as follows:

"MY DEAR MR. HAIGHT:

"Thanks for your letter of the 7th inst. and same is, I think, *in conformity with our arrangements,* provided the meaning of same is well interpreted by us, viz.: you are to be reimbursed in cash for all your past and future expenses and services $25,000, plus 5% upon the first $2,000,000 — or any lesser sum our company may save on the original purchase price and such sum which we may eventually have to pay in settlement.

"It is further understood we pay you 2½% on all sums saved over and above $2,000,000. It is understood however, that the difference found in deadweight capacity and all sums saved thereon, your services and expenses thereon are comprised in the $25,000 fixed payment.

"The survey of the steamers is going well, and as far as we can make out, very serious defects are admitted."

After arriving in New York, Mr. Haight answered Senator Brys' letter as follows:

"Your letter of July 14th reached me before my departure from Norway, but my movements were so rapid and I was working under such pressure that I did not have the opportunity of replying to you.

"In your recapitulation of my letter of July 7th, you do not make reference to paragraph (3), which appeared on page two of my letter, but I do not understand that there is any question about that paragraph, as it was quite fully discussed by you and Mr. Gylsen and myself."

This brought a reply from Mr. Gylsen, in part as follows:

"I have before me the letter which you addressed to Mr. Brys on the 16th ult., also the one of the 19th addressed to me, and carefully note all the happenings you report.  *  *  *

"Re money matters, this has been attended to in the meantime, and you will no doubt have received the $7,500 which we have instructed our New York office to pay over to you."

Thereafter, to and including June 15, 1922, on which day defendant made final payment for the steamships, the plaintiffs performed services for the defendant pursuant to their agreements; and on or about June 15, 1922, the United States Shipping Board readjusted the amount of the original purchase price of the steamships by allowing the defendant a reduction therefrom of $593,000 because of the overstatement of the dead-weight capacity of the steamships. In addition to said allowance on account of the overstatement of dead-weight capacity, the Shipping Board also allowed the defendant as a further reduction, from the readjusted purchase price of the steamships, $5,032,415.77, which defendant saved. To this end the plaintiffs had been negotiating on behalf of defendant from about December 3, 1920, to June 15, 1922.

It is alleged that by virtue of the contract and of the services rendered thereunder, and of the allowances, deductions and saving accruing to the defendant, the plaintiffs became entitled to payment from the defendant of the sum of $175,810.39 in addition to the minimum cash payment of $25,000, making a total of $200,810.39. The defendant paid them under the agreement the sum of $17,500; so that there was claimed to be due to the plaintiffs by the defendant at the time of the trial $183,310.39, which, with interest, equals the amount of the verdict.

Appellant seeks to defeat a recovery by plaintiffs because they had an interest of one-third of one per cent by reason of arrangements with Anderson or his company, in any amount paid on the notes. Before the interchange of letters quoted above Mr. Haight told defendant's representative of his relations with Anderson and the Anderson Company, though it seems he did not tell them how much his firm was to receive from that source. Defendant knew that it was to Haight's interest to see that Anderson, his client, was paid his commissions. Knowing this, however, the defendant made it to the interest of plaintiffs to obtain a reduction in the price agreed to be paid the United States government. Moreover, it appears to have been of paramount interest to all concerned to insure payment by defendant by lifting a substantial part of the burden resulting in part from changing conditions referred to above.

Technically there might seem to have been a conflict of interests. But if there was, it must have been known to defendant in the ordinary course of events and it was such as not to imply a sacrifice of the interests of the defendant. We are satisfied, furthermore, that the plaintiffs worked in the best interest of defendant, bringing about a saving to it of about $5,000,000; and that defendant is now endeavoring on a mere technicality without sub-

stance or justice, to avoid payment under its arrangement with plaintiffs.

The defense that the plaintiffs misrepresented their influence and were discharged was not established by the evidence.

The judgment should be affirmed, with costs.

CLARKE, P. J., MERRELL and FINCH, JJ., concur.

Judgment affirmed, with costs.